Good morning, and may it please the Court, Michael Tamaki, Deputy Federal Public Defender, appearing on behalf of Mr. Marcial-Gonzalez. Unless the Court has any questions, and I suspect it doesn't, about the criminal history issue, I'm going to address the issue that's specific to this case. And it is primarily, does Rule 32, which requires the district court to verify the defendant has read the pre-sentence report and discussed it with counsel, did the district court comply with that rule here, where all he did was verify that the defendant had received the pre-sentence report? Let me ask you a question, which I think is somewhat central in this determination. Did you ever object any place before getting here about this? No, there is no objection in the record on this. So it's a plain error review? It would appear to be a plain error review, Your Honor, but in every one of this Court's cases, and from the out-of-circuit cases I've seen, there's no indication in any of those that there was an objection, and they all reviewed it just straight on the merits. And there's no mention of plain error. So although there was no objection below, there's also no precedent for reviewing on plain error on that basis for this particular error. And one would expect that had there been an objection in those cases, it might have been noted, because obviously when there is an objection, it's dealt with. And in a case like this ---- Well, it seems to me that that's a pretty important thing, a pretty important distinction to make here, because if we're going to do a plain error, then, you know, I can't look. I can't look at what might have been or could have been or might be, but I've got to look at something that absolutely should overturn. And here, I have a problem in that. Has the defendant received a copy of the modified pre-sentence report? Yes. Are there any objections to anything set forth in the pre-sentence report? No. Is there anything you'd like to say to the court before I impose the sentence? I'd just like you to give me a fair sentence, because I'm going to be deported, and I came from state prison, and I've already done some time. Then I read the memo that was sent. This was the memo that was sent by counsel, memo from the defendant. I concur with the PSR and respectfully request that the court impose a term of imprisonment at the low end of the range as determined by Level 17 and Criminal Category 4 in accordance with the recommendation in the parties' plea agreement. Now, if I'm in a plain error situation, why do I reverse on those facts? Well, Your Honor, even on the plain error, there's no indication that the court has complied with its duty to verify that the defendant has read and discussed the report with counsel. How can he say he concurs with the PSR? His counsel suggests he concurs and requests the term of imprisonment that has been agreed to by all the parties, including the Level 17 range and the Criminal Category of 4, which is the only thing that he's got anything to argue about on the Criminal Category situation. I guess I'm trying to figure out, given all of that in the record and a plain error review. I'll refer the Court to a case that was just discussed, albeit in a different context, Saltero. Yes. In Saltero, we had both of those things. We had, one, the attorney objected, and the Court noted that the objections were such that it implied that the attorney had spoken with his client about the presentence report. Nonetheless, this Court in Saltero found that insufficient. Likewise, in Saltero, the attorney said that we had, referring to the presentence report, used the word we. Again, in Saltero, this Court found that wasn't sufficient. It's very clear for this, the precedent of this Court, that there has to be some indication that, not only the lawyer, but some objective, positive indication on the record that the person being sentenced, the defendant, the person facing time, has read and discussed the report with counsel. All we have here is a bare assurance that he received it. And there's numerous cases, both in this circuit and in our circuit, where it's clear that the defendant has received the report, but that is not sufficient to comply with Rule 32. It's very cut and dry. This is a really simple requirement, and it's very simple to comply with, and there's just nothing here to show that. We can read something and imply it and infer it, but that's just not sufficient. In fact, in any case, you could probably infer, for certainly any case with competent counsel, you could probably infer that it's likely that counsel read and discussed the report with his client. But that's not the rule. That's not the standard. It's not, is it likely, is that what a good lawyer would do? Isn't the standard in Saltero, as explained there on page 863, that you need not specifically inquire if it can reasonably rely on evidence indicating that a defendant has read the report and discussed it with counsel? Isn't that what Saltero says is the standard? And then it goes on to say that counsel's objections based apparently on his discussions with the defendant aren't good enough, and the only precedent, the only cases that the government has cited, the only cases that I've seen where that implication has been found in the record is where counsel says, I read the report and discussed it with my client, and the client is sitting there and says nothing. Oh, no, he didn't. But absent that, and we don't have that in this case, it's just, it is primary. Well, isn't it the usual practice for the court to ask the defense counsel whether he has, whether his client has read the pre-sentence report, whether he's discussed it with his client, and then when the client comes up to verify that the client has read it and that it's been discussed and the client understands it? I mean, there's usually more than one question or two. That's exactly right, Your Honor. And as district court judges, I'm fairly certain that you each comply with that requirement. It's a very simple requirement. It's the only time, it's only, there's only two times that the person who's being sentenced addresses the court, and that's one of them. It's not too much to ask that the person is sentenced based on something that he's read and discussed with counsel. And that's all the rule requires. There's not that showing here. A remand is clearly required. And I reserve my remaining time for comment. Thank you. Thank you for your argument, sir. May it please the Court. Eric Silber again on behalf of the United States. You're getting a good workout today. A lot of speaking time. Addressing first, Judge Schmidt, your point about plain error review, it's been the government's position in these types of cases, including in Saltero itself, that these claims should be subject to plain error review. And I'll note, although there's no mention in our brief on this here, we included a footnote there specifically addressing that, saying this should be subject to plain error review. But I think this Court hasn't subjected it to plain error review, despite the government's suggestion in the impasse. In Saltero, there was no objection made that Rule 32 wasn't complied with in the district court. Yeah, it's what I just said to Mr. Tanaka, the questions I asked him. It is, isn't it, the usual practice for the judge to address the defendant and ask the defendant whether he's read the report, whether he's discussed the report with his attorney, and whether he has any problems or objections of the report. That's dumb. It is dumb. But I think that's what the Court was doing here. I think that's what, when the Court was asking the defendant, do you have a copy of the PSR, he was going through those questions. His two questions were, do you have a copy of the PSR, do you have any objections to it. Taking the first question, I'll note that, as we noted in our brief, the PSR isn't some document the defendant would inherently have. It has to be given to him by defense counsel. And it's natural to expect that, in handing it to him, they would have gone over it. Moreover, the defendant's response, and as defense counsel pointed out in their brief, the defendant doesn't speak English. His response isn't to, do you have, have you received the PSR, wasn't, I don't know what document you're talking about. I mean, the PSR isn't an inherent document that an ordinary person would understand. Yeah, but when they're standing up there and they don't speak English and all that, you know, most of the time they're really not sure what's going on. They're in a strange environment. And they're just going to say, yes, yes, or they understand the question. And lots of times I've had this experience where the defendant has his own interpreter, you know, the government interpreter, and they'll even get into an argument about the accuracy of the courts interpreter. So we don't have that here. Do I have any indication of interpretation problems here? There's no indication of that. And what Your Honor has suggested is that there should be a colloquy requirement. But the problem is this rule doesn't require a colloquy requirement. It just requires there be, the district court reasonably rely on the evidence before it to conclude this is done. It doesn't require the district court to be right. It just says does the court reasonably rely on the evidence that was before it. And when you look at this evidence, have you received the PSR with the defendant knowing what it is you're talking about, which document? And the next question, are there any objections to the PSR? That question isn't directed towards defense counsel. It's directed towards the defendant most likely who just answered the previous question, but at worst both of them. Well, my worry, counselor, in this particular matter is this. If I look at Lewis, it seems to me that in Lewis the court never asked the defense attorney. However, he on appeal claimed he had never read the PSR and he only got it five minutes before sentencing. But underneath that, at sentencing the defense counsel told the court the defendant had read the PSR and the defendant did not dispute that assertion when he was given the chance by the court. And the defendant had also signed a form acknowledging that he'd read the PSR. Now, that's more facts than I got here. It's different facts, but I would note even in Lewis, there's two things that the rule requires, is the defendant read and discussed it. In Lewis, there was no mention of discussing the PSR with defense counsel. What was said in Lewis was this is by the defense counsel. I thank the court for the time to have Mr. Lewis read and consider the presence report. And I'll take a break to the next part when he talks about the substance of it. I think that Mr. Storm, who is the probation officer, adequately and accurately sets the plight, sets forth the plight of Mr. Lewis. There's no indication there, no express indication that they discussed it, but the court is implying it from the circumstances that they had. And it's no difference to imply it here when you look at the, it's not just the context of the hearing. As Your Honor mentioned previously, you do have the sentencing paper that was filed before this, which the district court mentioned that it had read, which said, it lays out the criminal history category, which is 4, and says, Mr. Marcio Gonzalez concurs in the PSR, which is a statement the defendant agrees with the PSR's criminal history calculation, which is the only thing that is at issue. And I think the district court in that circumstance can reasonably conclude that not only did the defendant read the PSR, but he discussed it with counsel if the counsel is able to make that type of representation. Well, the problem comes, since having made these sentences before, there are many times when you are, you know, you understand the defense counsel has many things to do and that there are many things that come up, and what you're trying to make sure of is that that defendant has actually studied that PSR a little bit and talked to his counsel about it so that he doesn't just automatically go for it just because he thinks he's going to get a deal. And then thereafter, after really having read it, he finds he didn't get the deal because there's things in there that he wouldn't agree to. And so good judges always go through it. I mean, I said, have you read it? If they were speaking Spanish, I said, how in the devil did you read it? It's in English. I could hardly read it. You know, did you discuss it with your counsel? And I guess maybe what this court is being saying, and that's the thing that we have to struggle with, that it is plain error if you don't ask them if they've read it and discussed it. That's obvious we ought to do it because it's in the rule. Well, I think in both, as I said in Lewis, this court didn't require specific inquiry or even evidence on the record as to both factors. If you look at Murray, which is another case of this court's, all that was asked is have you reviewed the pre-sentence report completely with Mr. Murray, the defense counsel. The defense counsel says yes. No statement that the defendant there, Mr. Murray, had read the PSR. I think in this court's cases it has looked to inferences, not just direct statements on the record. And the problem is when you look at these inferences on this record and the statements that are made, the court could reasonably conclude, and it's only reasonably conclude, that this had taken place here. What's the worst that could happen if we said, no, send it back? Well, but it's the same thing that could happen if the defendant files an ineffective assistance of counsel claim under 2255 and says that counsel didn't consult with him on this and there's an error in his criminal history calculation. The question here is who's responsible for the error. Was it the district court, in which case there should be a remand here, or was it defense counsel, in which case there should be a habeas proceeding? I don't think on this record it was the district court. Well, who represented this person before the district court? It was a different deputy federal public defender. So it was the federal public defender's office. But, I mean, that claim is available to the defendant. But, you know, when I was on the district court, if I even came close to missing something, which really rarely happens, the assistant U.S. attorney would be up there saying, oh, Your Honor, I'd like to call your attention to the fact that this hasn't been covered. Well, thank you. Then I'd cover, you know. Even though I had my script, I'd check off. I knew I was going to cover everything. But they were alert, the U.S. attorneys, because what you're trying to avoid as a district judge and as a prosecutor, you're trying to avoid subsequent 22, whatever it is, 2255 motions. I think that's the number. After you sentence someone, you want to close all the doors to sentencing. So that's the reason that you have this detailed colloquy. Now it's even worse. The sentences take sometimes a couple hours to go through. So I think you've got to be very careful. And you can't always be sure that these defendants really understand what's in these pre-sentence reports, especially when you've got all the complexity of sentencing guidelines. And you've had the probation officers who are supposed to be social workers, and now they spend a great deal of their time developing all these calculations. That's all I'm saying. Well, I think we usually, our office is usually very vigilant about this. And I can only speculate here, but I would speculate for the same reason that the district court thought that the rule had been complied with, as did the United States attorney. When you look at what the questions that were asked and the record you had, I think the reasonable conclusion is that the defendant had read the PSR and gone over this. I think one thing to point out, which I think I haven't mentioned previously, is this isn't a normal PSR. This isn't something that is pages and pages of defendant's family background, that you have the kind of issues you normally have with a PSR of verifying factual information. Because it's used for other purposes, not just sentencing issues, to determine their classification with the Bureau of Prisons. This is a limited PSR as to criminal history category. It's only as to defendant's criminal convictions. The defendant said, or defense counsel said, that Mr. Marcial Gonzalez concurred in that criminal history calculation. And I think on this record, with this PSR, what the district court did was reasonable. But you would agree that the addition of the one criminal history point, which is now disputed, has some significance. I mean, we can't just say there's no prejudice. There's an additional seven months to a sentence based on that. No, now that he's stated both in his report. I mean, I think you could make on a, I should back up and say, I think on this record it is clear that it's his conviction. If you look at the interlocking. Well, that's what he's disputing. He is disputing. I mean, what he has said, though, I mean, I think it's fair not to say, I think the better way to resolve this is not reach the prejudice in court and to say that what the court did here under Rule 32 was sufficient and reasonably right on the evidence before it. Typically what this court has done in Saltero, for example, is to say, even though there is no evidence on the record of the hearing or nothing, the court can reasonably rely on, the defendant hasn't actually said that he read the, didn't read the PSR to go over with counsel. There are statements about that here. So that prejudice basis doesn't apply. And you do have some dispute about this conviction. As I said, it's our belief on this record that, on this PSR record, that there's evidence of this conviction. Not just the one paragraph it issued. This is paragraph 10. But if you look at the previous paragraphs, the previous conviction, this is paragraph 7, and the subsequent paragraphs, this is paragraph 13. There's interconnection between these three convictions. If you look at paragraph 10, which is the disputed conviction, what you notice is he came back on, or at least he's arrested on June 1, 2004 and sentenced on June 3, 2004. And that the conviction in paragraph 12 involves, he was on probation at the time. If you look back at paragraph 7 of the PSR, and this is in the third column of paragraph 7 of the PSR, what you see is the defendant is on probation for his assault with a deadly weapon offense. On 6304, the same date as the sentencing in that case, his probation is revoked. The only fair inference is it was revoked for that offense. The defendant doesn't object to that part of the PSR. He doesn't say that's wrong. That's not his conviction. He wasn't violated for that. If you look at paragraph 13, it's his conviction that leads to his being found in the United States. He's arrested on 62005 and is sentenced on 62905. If you look back at paragraph 7 of the PSR, again, the third column, and paragraph 10 of the PSR, in both circumstances, probation is violated and terminated based upon that conviction. There's no dispute that that's his conviction. So I think even on this record, with what you have in the PSR, it is clear that this is his conviction. And so I think you actually could say there's no prejudice based upon that. But I think the better course is to simply say that the district court acted reasonably here on the information it had before it. And if a defendant wants to make a claim that defense counsel made these statements that he concurred on the PSR without consulting him about it, and that there was an error in the PSR, the remedy for that is an habeas proceeding. If the panel has no further questions, we'd be happy to submit. Go ahead. Just one closing observation, Your Honor. This was both an important rule for all the reasons that Judge Smith and Judge Prager submitted and noted that it's important to get this information right. And it's a simple rule to enforce. That wasn't done here. We submit that the case should be remanded. If nothing else, just to reinforce the notion that this is something that needs to be complied with. And if it's not, we'll send it back and make sure that it is. It's just remanded for resentencing. That's right, Your Honor. And not remanded to have a habeas petition filed and sent to the magistrates. The government's suggestion that this is best dealt with with subsequent 20 to 55 shows, I think, that the better course is obviously just a simple remand instead of starting a whole new proceeding. All right. Thank you. Thank you for your argument, both of you. It's good work. All right. Okay. Now we have Alexander Mikhailovich Kashin versus the United States.
judges: Pregerson, Hall, Smith